IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00514-RBJ-MEH

DEANNA GORDON,

    Plaintiff,

v.

DONALD RICE,

    Defendant.

---

### ORDER TO DETERMINE PRIVILEGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Defendant's Unopposed Motion for In Camera Review [filed January 3, 2014; docket #37]. While Judge Jackson granted Defendant's unopposed request for the Court to conduct an *in camera* review of documents withheld by the Plaintiff, the Defendant also requests an order "that the medical, employment, psychological, radiological, pharmaceutical, insurance and tax return records regarding Plaintiff Deanna Gordon be produced to Defendant." Motion, docket #37 at 10. Plaintiff filed a response on January 27, 2014, opposing Defendant's request. Docket #43. On February 10, 2014, Judge Jackson referred the disputed matter to this Court for resolution [docket #44]. For the reasons that follow, the Court **grants in part and denies in part** the Defendant's request.

**I.    Background**

Plaintiff initiated this action on January 17, 2013 in Denver County District Court. *See* docket #1-3. On February 27, 2013, Defendant removed the action to this Court asserting diversity jurisdiction. Docket #1. Plaintiff brings claims of negligence and negligence per se against Defendant, alleging essentially that the Defendant crashed his truck into her vehicle on September

18, 2010, which caused injuries and damages to the Plaintiff. *See* docket #1-3. Defendant filed an Answer to the Complaint on February 27, 2013 denying Plaintiff's allegations. Docket #2.

Judge Jackson held a scheduling conference in this case on May 14, 2013, and discovery proceeded to the cutoff of January 14, 2014. Meanwhile, on November 26, 2013, Defendant filed a motion to compel the production of documents withheld by the Plaintiff. *See* docket #29. Judge Jackson denied the motion for "procedural reasons," saying that the Defendant did not comply with the conferral rules and submitted a motion and attachments that amounted to "overkill." Minute Order, December 17, 2013, docket #36 at 1. At the same time, Judge Jackson found that

> a plaintiff who brings a personal injury case must produce all medical records related to treatment of the injuries and any pre-existing similar injuries. The Court will view her obligation to produce medical information broadly. Also, she generally must produce employment and financial records that are relevant to her claim for lost earnings. ... there should be no reluctance to produce medical and financial records, and the Court will consider sanctions for failure to make reasonable responses to discovery in that regard.

*Id.* at 1-2. Judge Jackson further ordered the parties to confer on the disputed discovery and directed the Defendant to file a renewed motion to compel, if necessary, on or before January 3, 2014. *Id.*

Rather than filing a motion to compel, Defendant filed the present motion on January 3, 2014 seeking both an order granting its request for the Court to conduct an *in camera* review of the Plaintiff's withheld documents and an order requiring the Plaintiff to produce such documents to the Defendant. As set forth above, Judge Jackson granted Defendant's first unopposed request and referred his second opposed request to this Court for resolution.

Defendant argues that, even if Plaintiff's documents are otherwise protected work product, Defendant has a substantial need for the documents and cannot obtain their substantial equivalent by other means. Further, Defendant contends that, due to the number of injuries and extent of damages she claims, Plaintiff must produce written releases for the production of her medical,

2

employment, psychological, radiological, pharmaceutical, insurance and tax records. Specifically, Defendant asserts that Plaintiff's psychological records are relevant to Plaintiff's claims of concussion, memory loss, delayed cognitive response and headaches. Further, Defendant claims that Plaintiff's employment records are relevant not only to her wage loss claims, but also to her head injury claims to show how Plaintiff was functioning during her employment with the City and County of Denver and AMF Bowling. In addition, Defendant requests production of Plaintiff's education records from high school to the present, stating they are relevant to Plaintiff's head injury claims because they may reflect pre-existing cognitive issues. Defendant also requests Plaintiff's eye and ear treatment records arguing that head injuries may cause "double or fuzzy vision," "sensitivity to light or noise," "ringing in the ears," and "dizziness or seeing stars."

Furthermore, Defendant seeks copies of missing pages from Plaintiff's Kaiser Permanente records, including pages 17-44, 46-47, 50-59, 63-86, and 91-104, plus 1-98 of a different Kaiser document. Defendant also argues that Plaintiff lists "unrelated medications" in her privilege log, but fails to mention what conditions or body parts the medications were used to treat and, thus, Defendant cannot determine whether the information is privileged. In addition, Defendant seeks the production of all radiological images of body parts Plaintiff claims were injured in the subject accident; the identities of all of Plaintiff's primary care physicians and their records; updated medical and billing records from Dr. Miller of Rehabilitation Services from March 23, 2011 to the present; Plaintiff's physical therapy records as referenced in a July 15, 2013 Kaiser record; copies of all work releases including those from 2013; the written histories from all physicals and well woman exams; and all records regarding Plaintiff's left hip pain, which can manifest as pain in the lower back. Additionally, Defendant seeks an order requiring Plaintiff to sign releases for or produce her tax returns from 2005 to 2012. Finally, Defendant asks that the Court order Plaintiff

to sign a release for her insurance records, since Plaintiff has acted "improperly" as a gatekeeper of her medical records.

Plaintiff responds asserting that, as a result of the subject accident, she suffered injuries to her left shoulder, right arm, right hip, right thigh and right knee, as well as a concussion, which has led to petit mal seizures, memory loss, delayed cognitive response, loss of balance and coordination, vertigo and headaches. Plaintiff argues that she has produced all medical, psychological, radiological, pharmaceutical, employment, insurance and wage records in her custody and control spanning the last ten years relevant to this case. Plaintiff claims that, for those documents withheld, she has rightfully asserted privileges and has produced a proper privilege log to Defendant.

Although provided the opportunity to do so (*see* D.C. Colo. LCivR 7.1(c)), Defendant filed no reply brief in support of its motion. The Court has reviewed the motion, the response and all documents submitted for *in camera* review and is now sufficiently advised.

## II.     Legal Standards

Rule 26(b)(5) of the Federal Rules of Civil Procedure governs the withholding and production of privileged materials in a federal lawsuit. As pertinent here, Rule 26(b)(5) states:

> (A) *Information Withheld*. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.
>
> (B) *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve

the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5).

In diversity jurisdiction cases such as this one, state law controls the issues of privilege raised by the parties. *See* Fed. R. Evid. 501; *see also Trammel v. United States*, 445 U.S. 40, 47 n.8 (1980).

**III.   Discussion**

Based upon the applicable rules and case law, the Court will analyze first whether the withheld documents are protected from disclosure by each claimed privilege. If the documents are protected, the Court will proceed to determine whether the documents should be produced nonetheless.

      A.     <u>Are Plaintiff's Medical Records Protected by the Physician-Patient Privilege?</u>

In the present case, Plaintiff has withheld a number of her medical records on the basis of the physician-patient privilege. "Colorado's physician-patient privilege prevents a physician, surgeon, or registered nurse from being examined as a witness as to any information acquired in and necessary to treating a patient without the consent of the patient." *Cardenas v. Jerath*, 180 P.3d 415, 423 (Colo. 2008) (citing Colo. Rev. Stat. § 13–90–107(1)(d) (2007)).

The statute mandates:

> [A] physician, surgeon, or registered professional nurse duly authorized to practice his [or her] profession pursuant to the laws of this state or any other state shall not be examined without the consent of his [or her] patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

*Id.* at 423-24. "This privilege applies equally to pretrial discovery as it does to in-court testimony." *Id.* at 424 (citing *Weil v. Dillon Cos., Inc.*, 109 P.3d 127, 129 (Colo. 2005)). "Thus, the physician-patient privilege protects certain information from discovery even if the information is relevant to the subject matter of the case and would be discoverable otherwise." *Id.* (citing *Alcon*

5

*v. Spicer*, 113 P.3d 735, 738 (Colo. 2005)).

The Defendant does not appear to dispute that the medical records (or information contained therein) are facially protected by the physician-patient privilege in this case. Rather, he argues that the information is or may be related to claims in the case. Specifically, Defendant asserts that Plaintiff's psychological records are relevant to Plaintiff's claims of concussion, memory loss, delayed cognitive response and headaches. Defendant also requests Plaintiff's eye and ear treatment records arguing that head injuries may cause "double or fuzzy vision," "sensitivity to light or noise," "ringing in the ears," and "dizziness or seeing stars."

In addition, Defendant seeks the production of all radiological images of body parts Plaintiff claims were injured in the subject accident; the identities of all of Plaintiff's primary care physicians and their records; updated medical and billing records from Dr. Miller of Rehabilitation Services from March 23, 2011 to the present; Plaintiff's physical therapy records as referenced in a July 15, 2013 Kaiser record; copies of all work releases including those from 2013; the written histories from all physicals and well woman exams; and all records regarding Plaintiff's left hip pain, which can manifest as pain in the lower back.

B.     Has the Physician-Patient Privilege Been Waived?

"The physician-patient privilege is designed to protect the patient, and the patient may waive such protections, thereby consenting to disclosure. *Cardenas*, 180 P.3d at 424 (citing *Alcon*, 113 P.3d at 739). "One way a party waives the physician-patient privilege is by injecting his or her 'physical or mental condition into the case as the basis of a claim or an affirmative defense.'" *Id.* (quoting *Clark v. Dist. Ct.*, 668 P.2d 3, 10 (Colo. 1983)). "This waiver does not amount to a general disclosure of the patient's entire medical history, but rather is limited to the cause and extent of the injuries and damages claimed. *Id.* (citing *Alcon*, 113 P.3d at 740) (noting that where records sought

6

are unrelated to treatment of mental or physical issues arising out of the injuries claimed, the privilege is not waived and the records were not ordered disclosed). Accordingly, "'relevance alone cannot be the test' for waiver of the physician-patient privilege." *Alcon*, 113 P.3d at 741 (quoting *Weil*, 109 P.3d at 131).

Here, Plaintiff asserts that, as a result of the accident, she suffered injuries to her left shoulder, right arm, right hip, right thigh and right knee, as well as a concussion, which has led to petit mal seizures, memory loss, delayed cognitive response, loss of balance and coordination, vertigo and headaches. In addition to economic damages, Plaintiff seeks "non-economic damages including, but not limited to, pain and suffering, inconvenience, emotional distress, loss of enjoyment of life and impairment of quality of life." Complaint, ¶ 13, docket #6. Importantly, the Colorado Supreme Court has held that a plaintiff did not waive the physician-patient privilege by merely seeking damages for mental anguish and emotional distress:

> Johnson is a tort plaintiff who asserts, like many others in her position, generic claims for damages for mental suffering incident to her physical injuries. As it happens, Johnson has sought counseling for some unrelated emotional issues at various times in her life. Johnson has not made any independent tort claims for either intentional or negligent infliction of emotional distress, in which the question of liability would turn on her mental condition and the cause of it. She did not seek counseling for any emotional issues *related* to the accident. She does not seek compensation for the expenses incurred in obtaining either psychiatric counseling or marriage counseling. And finally, she does not plan to call any expert witnesses to testify about her mental suffering. Under these circumstances, we hold that bare allegations of mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life are insufficient to inject a plaintiff's mental condition into a case as the basis for a claim where the mental suffering alleged is incident to the plaintiff's physical injuries and does not exceed the suffering and loss an ordinary person would likely experience in similar circumstances. Here, the mental suffering for which Johnson claims damages is incident to her physical injuries and does not exceed the suffering and loss an ordinary person would likely experience in similar circumstances. Thus, the trial court may not find an implied waiver of Johnson's physician-patient or psychotherapist-client privileges based on the fact that she has made these claims for mental suffering damages.

*Johnson v. Trujillo*, 977 P.2d 152, 157 (Colo. 1999) (emphasis added).

7

As set forth above, the Plaintiff has provided, for this Court's *in camera* review, copies of her redacted and original medical records, including those that have been withheld. After a thorough review of these records, the Court concludes that the majority of them are protected by the physician-patient privilege and are unrelated to treatment of mental or physical issues arising out of the injuries claimed in this case. Therefore, the Court will deny Defendant's request for an order requiring disclosure of these unrelated records.

However, the Court finds in Plaintiff's Amended Second Privilege Log that two pages relate to Plaintiff's alleged brain injury and were (likely) inadvertently withheld from disclosure. Unfortunately, the Plaintiff did not Bates label any pages produced, so the Court cannot refer to such pages by page number. The first page that must be produced to the Defendant is dated March 1, 2011 and refers to a call from Nancy Ruff, RN to the Plaintiff regarding an MRI. The second page is also dated March 1, 2011 and is a letter from Nurse Ruff to the Plaintiff regarding an MRI. The Court finds that these records relate to an injury claimed in this case and orders the Plaintiff to produce copies of these records to the Defendant.

Moreover, the Defendant asserts that Plaintiff should produce "all work releases" within the relevant time period. According to Plaintiff's Fourth Privilege Log, she has withheld return to work notes from 2008 and 2009. The Court finds that these notes are not protected by the physician-patient privilege, as they were prepared specifically by the physician to provide information to a third party and the information contained therein was not meant to be confidential. *See, e.g., Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001) (finding, with respect to the attorney-client privilege, that if a client communication is made to an attorney in the presence of a third party, the communication ordinarily is not considered confidential). Accordingly, the Plaintiff shall provide copies of the "Return to Work Treatment Verification" forms dated March 28, 2008, April 18, 2008, July 3, 2008, March 20, 2009, and December 17, 2009 to the Defendant.

As for Defendant's suppositions that (1) Plaintiff's psychological records are relevant to Plaintiff's claims of concussion, memory loss, delayed cognitive response and headaches, and (2) Plaintiff's eye and ear treatment records may be related to her alleged head injuries since eye and ear problems may cause "double or fuzzy vision," "sensitivity to light or noise," "ringing in the ears," and "dizziness or seeing stars," the Court finds that the medical records reveal nothing supporting Defendant's suppositions and, therefore, the records are not related. Defendant's request for these records is denied.

Defendant also expresses a concern that Plaintiff has failed to describe the "unrelated medications" in the privilege logs. In *Alcon*, the Supreme Court held that a party asserting the physician-patient privilege must provide the party seeking the medical records with a privilege log identifying each of the medical records for which the privilege is claimed. *Id.* at 742. The party asserting the privilege must describe each medical record with sufficient detail so that the applicability of the physician-patient privilege can be assessed by the party seeking the medical records and, if necessary, by the trial court. *Id.*

Here, the Court finds that while the Plaintiff failed to describe the "unrelated medications" with sufficient detail in certain entries on two of the five privilege logs, after review of the records, the Court concludes that the medications are, indeed, unrelated. That is, in Plaintiff's first privilege log, the entries for "unrelated medications" on page 2 relate to gastrointestinal and pulmonary issues and the entry on page 3 relates to cardiovascular issues. On Plaintiff's Amended Second Privilege Log, the entry on page 1 relates to gastrointestinal, cardiovascular and nephrological issues, the entry on page 5 relates to travel, and the entry on page 6 relates to gastrointestinal, cardiovascular and respiratory issues. The Court denies Defendant's request for production of these unrelated records.

With respect to any other requests for production the Defendant has made here (*i.e.*, copies

9

of missing pages from Plaintiff's Kaiser Permanente records, including pages 17-44, 46-47, 50-59, 63-86, and 91-104, plus 1-98 of a different Kaiser document; all radiological images of body parts Plaintiff claims were injured in the subject accident; the identities of all of Plaintiff's primary care physicians and their records; updated medical and billing records from Dr. Miller of Rehabilitation Services from March 23, 2011 to the present; Plaintiff's physical therapy records as referenced in a July 15, 2013 Kaiser record; the written histories from all physicals and well woman exams; and all records regarding Plaintiff's left hip pain), the Court notes that Defendant chose to file the present motion requesting only that "this Court conduct an in camera review and order that the records regarding Plaintiff currently being withheld and/or redacted be produced to Defendant (and that releases for relevant records be provided to Defendant)."  Motion, ¶ 2, docket #37.  While Defendant attempts to "incorporate" his previously filed motion to compel "by reference the same as if fully set forth at length," Judge Jackson denied that motion because, *inter alia*, "[a] 29-page motion to compel in a simple auto accident case, supported by 254 pages of exhibits, is overkill." December 17, 2013 Order, docket #36.  Most of the records requested above have been found to be unrelated or are not contained in the documents produced for *in camera* review (*i.e.*, all radiological images of body parts Plaintiff claims were injured in the subject accident; the identities of all of Plaintiff's primary care physicians and their records; updated medical and billing records from Dr. Miller of Rehabilitation Services from March 23, 2011 to the present; Plaintiff's physical therapy records as referenced in a July 15, 2013 Kaiser record; the written histories from all physicals and well woman exams) and, thus, without evidence that the records have been already requested by the Defendant, the Court will not compel production.

However, the Court acknowledges the Defendant's claim of "omission" of certain pages of Kaiser medical records and notes again that the Plaintiff failed to Bates label or number any of the documents she has produced in discovery.  Even if not required by the applicable rules, the Court

finds that such failure causes confusion and disorganization, particularly with the number of records produced in this case. Moreover, without proper labels, the privilege logs omit references to specific pages that have been redacted or withheld. Accordingly, in the interest of judicial efficiency and to abate the confusion and disorganization caused by Plaintiff's failure to label her documents, the Court will order the Plaintiff to label (whether by Bates or another suitable method) all documents produced to the Defendant and revise her privilege logs to include the page numbers of those documents withheld or redacted.

### C. Are Plaintiff's Income Records Protected?

For the recovery of her claims against Defendant, Plaintiff seeks "economic damages, including, but not limited to, medical, rehabilitation and other health care expenses, and loss of earnings." Complaint, ¶ 12, docket #6. However, Plaintiff has redacted or withheld certain income records, including her tax returns, pursuant to the claim of privacy/confidentiality set forth in *Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 720-21 (Colo. 1999). Defendant counters that, although Plaintiff has provided her W-2 forms from the City and County of Denver for the years 2007-2012 and a W-2 form from AMF Bowling for 2006, she has not provided any tax returns nor the W-2 forms from Denver for 2005 and 2006. Defendant claims that the W-2 forms and tax returns are relevant to Plaintiff's claim for lost earnings and to her credibility.

It appears that the only income records included in the documents produced *in camera* and listed on Plaintiff's privilege log are the W-2 forms produced to the Defendant with Plaintiff's social security number redacted (Defendant has not opposed such redaction). Therefore, again, without evidence presented here that the Defendant has requested the tax returns and the Plaintiff has objected, the Court typically would not compel production of such records.[1] However, Judge

---

[1] Although the Court is not required to sift through Defendant's 254 exhibits attached to the previously filed 29-page motion to compel, the Court found Defendant's request for eight years of

11

Jackson specifically mentions that discovery of income records may be necessary to defend against Plaintiff's claim for lost earnings. Accordingly, the Court will determine whether it is necessary to compel production of Plaintiff's tax returns and W-2 forms.

The Colorado Supreme Court recently recognized that it has, under different circumstances, constructed two tests to determine whether documents claimed as confidential should be produced in discovery. *In re Dist. Ct., City & Cnty. of Denver*, 256 P.3d 687, 691 (Colo. 2011) (en banc). The court concluded that one comprehensive test should be applied:

> We hold that instead of choosing between the *Martinelli* and *Stone* tests, trial courts should apply a comprehensive framework — incorporating, as appropriate, the principles from both tests — to all discovery requests implicating the right to privacy. The party requesting the information must always first prove that the information requested is relevant to the subject of the action. Next, the party opposing the discovery request must show that it has a legitimate expectation that the requested materials or information is confidential and will not be disclosed. If the trial court determines that there is a legitimate expectation of privacy in the materials or information, the requesting party must prove either that disclosure is required to serve a compelling state interest or that there is a compelling need for the information. If the requesting party is successful in proving one of these two elements, it must then also show that the information is not available from other sources. Lastly, if the information is available from other sources, the requesting party must prove that it is using the least intrusive means to obtain the information.

*Id.* at 691-92. *In re Dist. Ct.* involved requests for documents and information concerning an individual's compensation over a period of four years. *Id.* at 689. The court noted "this broad discovery request likely includes tax returns as well as other financial documents and potentially confidential information regarding" the defendants and held "based on the broader protection that we have afforded to financial records in other contexts, these documents fall under the umbrella of the right to privacy and necessitate analysis under the framework discussed above." *Id.* at 692 (citation omitted); *see also Stone v. State Farm Mut. Auto Ins. Co.*, 185 P.3d 150, 158 (Colo. 2008)

---

tax returns and Plaintiff's objection as to her right to privacy pursuant to *Alcon*. *See* docket #29-3 at 22 (RFP No. 4).

("[t]ax returns, by their very nature, would satisfy this initial inquiry [of confidentiality]."). Accordingly, this Court finds that Defendant's request for W-2 forms and tax returns seeks private information necessitating the *In re Dist. Ct.* analysis.

The Court finds that Plaintiff's wage information is certainly relevant to her claim for lost earnings; however, it is not equally clear that Plaintiff's tax returns, in their entirety, are relevant to the claim. Even if they were, though, Defendant has not demonstrated a compelling need for the tax returns. In *Stone*, the Colorado Supreme Court held that a trial court must find "there is a compelling need for the [tax] returns because specific information contained in the tax returns is not otherwise readily obtainable." *Stone*, 185 P.3d at 152. Here, Defendant argues only that Plaintiff's tax returns "are relevant to Plaintiff's claim for lost wages and her credibility." Motion, ¶ 30, docket #37. This is insufficient under *Stone*. While the Court acknowledges that tax returns contain annual earnings information, a W-2 form contains earnings information and Defendant has failed to identify what other information he needs from Plaintiff's tax returns to defend this case. Therefore, the Court will grant Defendant's request for copies of W-2 forms from the City and County of Denver for the years 2005 and 2006, but will deny Defendant's request for production of tax returns. Furthermore, to the extent they have not been produced, Plaintiff shall provide to Defendant copies of paystubs showing a reduction in earnings, if any.

D. <u>Are Plaintiff's Employment Records Protected?</u>

Plaintiff's Fourth and Fifth Privilege Logs reveal that she has redacted and/or withheld documents found in her City and County of Denver employment file pursuant to her "right to privacy" as set forth in *Corbetta*. Defendant requests that the Court order production of these documents arguing they are relevant to Plaintiff's claim for lost wages and allegations of a head injury/concussion. Again, the Court will apply the *In re Dist. Ct.* test to the employment records here.

First, the Defendant must demonstrate the requested information is relevant. Defendant argues that the employment records relate to Plaintiff's claim for lost wages and to her allegations of a head injury as it relates to problems with delayed cognitive response and memory loss. Defendant contends that the records "may reflect how Plaintiff was functioning at her job(s) from a cognitive and/or emotional perspective which would be relevant to the cause and extent of Plaintiff's claimed injuries." Motion, ¶ 11, docket #37. Essentially, Defendant seeks information from the employment records that may reveal Plaintiff's health history, which may be relevant to the injuries claimed here.

After a thorough review of the documents produced to the Court, keeping in mind Defendant's assertions that relevance lies in the lost earnings claim and alleged head injury, the Court finds first that any records dating before the relevant time period (as established by the parties), 2005-present, are not related to the claims in this action and will not be ordered produced. As for records dated within the relevant time period, the Court finds that none of the records withheld is relevant to the claims and defenses in this action. While the Defendant is correct that some records refer to prior injuries and illnesses, they are properly explained in the privilege log and do not relate to the treatment of mental or physical issues arising out of the injuries claimed. Further, Defendant asserts that "the records may also reveal prior unexplained absences which may be suggestive of other problems as well as daily work activity, performance and attendance"; however, Defendant does not explain how any such absences might be relevant to this case other than to speculate about doctor's appointments. Nevertheless, the Court finds Plaintiff's privilege logs accurately explain any such employment records that have been withheld or redacted. Furthermore, the Court finds that the records produced for *in camera* review neither implicate any of the Defendant's suggested bases for relevance nor relate to the claims and/or defenses in this action.

Even if the Defendant had demonstrated relevance of certain employment records related to Plaintiff's income or health, the Court finds the Defendant fails in a further analysis of the *In re Dist. Ct.* test. It is Plaintiff's burden to demonstrate her employment records are confidential. For this prong, the Colorado Supreme Court has determined:

> First, the claimant must show that he or she has "an actual or subjective expectation that the information . . . not be disclosed," as, for example, by showing that he or she divulged the information to the [employer] pursuant to an understanding that it would be held in confidence or that the [employer] would disclose the information for stated purposes only.
>
> Second, the claimant must show that the material or information which he or she seeks to protect against disclosure is "highly personal and sensitive" and that its disclosure would be offensive and objectionable to a reasonable person of ordinary sensibilities. The Schellenberg court posits a "descending order of sensitivity and constitutional interest," pursuant to which the claimant's objective expectation of nondisclosure is to be determined. At the top of this ranking are those materials and information which reflect the "intimate relationships" of the claimant with other persons. Below this ranking:
>
>> "the progressively lower tiers would include . . . (the claimant's) beliefs and self-insights; his personal habits; routine autobiographical material; and finally, his name, address, marital status, and present employment, which together may constitute his irreducible identity to anyone who has reason to acknowledge his existence."
>
> Depending, of course, on the circumstances of the individual case, it is less likely that information or materials in the lower tiers of this ranking will come within the zone of protection of the right to confidentiality.

*Martinelli v. Dist. Ct. in and for the City & Cnty. of Denver*, 612 P.2d 1083, 1091-92 (Colo. 1980) (citations omitted). As set forth above, the Court has determined that Plaintiff's medical and income records are considered confidential and such determination does not change if the records are found in a personnel file rather than a medical file.

Third, Defendant must show there is a compelling need for the information and the information is not available from other sources. Here, Defendant fails to show that he cannot or has been unable to get the information he seeks from other sources, particularly from the Plaintiff

herself. For example, Defendant notes that Plaintiff informed Dr. Jane Burnham that her job performance was the same both before and after the accident and that Plaintiff has observed "many different types of seizures" at work. Defendant contends that he is entitled to the job performance reviews to demonstrate whether Plaintiff's comments were true, and is entitled to know whether Plaintiff has been educated regarding seizures at work. However, Defendant says nothing about whether he asked Plaintiff directly about these issues. The same is true with respect to possible pre-accident seizures, memory loss and/or other pre-accident conditions that may be relevant to Plaintiff's claims.

Therefore, the Court will deny Defendant's request for the production of the employment records listed on Plaintiff's privilege logs and produced to the Court for *in camera* review.

## IV.    Conclusion

Accordingly, for the reasons stated above, it is hereby ORDERED that Defendant's Unopposed Motion for In Camera Review [filed January 3, 2014; docket #37], to the extent that Defendant seeks an order compelling production of the documents produced to this Court *in camera*, is **granted in part and denied in part** as follows:

(1)    The Plaintiff shall label (whether by Bates or another suitable method) all documents produced to the Defendant and revise her privilege logs to include the page numbers of those documents withheld or redacted on or before March 24, 2014;

(2)    Defendant's request for withheld or redacted medical records is granted in that the Plaintiff shall produce, on or before March 24, 2014, copies of the March 1, 2011 call record and correspondence concerning an MRI, as well as copies of the return-to- work notes dated March 28, 2008, April 18, 2008, July 3, 2008, March 20, 2009, and December 17, 2009; otherwise, Defendant's request for withheld or redacted medical records is denied;

(3)    Defendant's request for withheld or redacted income records is granted in that the Plaintiff

       shall produce, on or before March 24, 2014, copies of her 2005 and 2006 W-2 forms from the City and County of Denver, as well as copies of paystubs demonstrating her loss of earnings as described in this case, if any; otherwise, Defendant's request for withheld or redacted income records is denied; and

(4)     Defendant's request for withheld or redacted employment records is denied.

       Dated at Denver, Colorado, this 7th day of March, 2014.

                                        BY THE COURT:

                                        *Michael E. Hegarty* (signature)

                                        Michael E. Hegarty
                                        United States Magistrate Judge